Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 08, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS ANDREW ANARDI,<br><br>Defendant. | Case No.: 2:24-CR-00019-SAB-1<br><br>Plea Agreement |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney the Eastern District of Washington, and Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, and Defendant Nicholas Andrew Anardi ("Defendant"), both individually and by and through Defendant's counsel, Deputy Federal Defender Ryan Farrell, agree to the following Plea Agreement.

1. <u>Guilty Plea and Maximum Statutory Penalties</u>

Defendant agrees to enter a plea of guilty to Count 1 of the Indictment filed on February 7, 2024, which charges Defendant with Possession of Unregistered Destructive Device, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), 5871, a Class C felony.

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of not more than 10 years;

PLEA AGREEMENT - 1

      b.    a term of supervised release of not more than 3 years;

      c.    a fine of up to $250,000; and

      d.    a $100 special penalty assessment.

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

      a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

      b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

      c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.    <u>The Court is Not a Party to this Plea Agreement</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

      a.    sentencing is a matter solely within the discretion of the Court;

      b.    the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 2

c.   the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.   the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.   the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.   the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

4.   <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

a.   pleading guilty in this case may have immigration consequences;

b.   a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

c.   removal from the United States and other immigration consequences are the subject of separate proceedings; and

d.   no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

PLEA AGREEMENT - 3

5. <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a. the right to a jury trial;

    b. the right to see, hear and question the witnesses;

    c. the right to remain silent at trial;

    d. the right to testify at trial; and

    e. the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. <u>Elements of the Offense</u>

The United States and Defendant agree that to convict Defendant of Possession of Unregistered Destructive Device, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), 5871, the United States would have to prove the following beyond a reasonable doubt.

    a. *First*, on or about September 11, 2021, within the Eastern District of Washington, knowingly possessed a destructive device to wit: an improvised explosive device described as a cardboard container wrapped with a length of iron wire and multiple layers of tape containing a quantity of explosive powder and pyrotechnic fuse;

PLEA AGREEMENT - 4

      b.    *Second*, the Defendant was aware that the destructive device was an explosive bomb or similar device; and

      c.    *Third*, the Defendant had not registered the destructive device with the National Firearms Registration and Transfer Record.

7.    <u>Factual Basis and Statement of Facts</u>

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On or about September 11, 2021, at approximately 7:44a.m., a Grant County Sheriff's Office ("GCSO") responded to an apartment complex in Moses Lake, Washington to investigate a report of a loud "bang and possibly a firework being set off." Upon arriving at the address, the deputy met with M.F., and a male, later identified as R.J., in the parking lot of a multi-unit apartment complex. Upon arrival, the deputy observed a black object, approximately 5-6 inches in length, that had been wrapped in electrical tape lying in the parking lot. The device was lying in front of Apartment #7. The deputy noted the device had a green fuse coming out of it and believed the object to be an explosive device.

Upon speaking with R.J., the deputy learned that R.J. resides in Apartment #6. R.J. further told the deputy that earlier that evening, he was lying down watching a movie when he heard a loud bang outside of his (front) door. R.J. stated that he got up and went to his kitchen and then went outside and noticed an explosive device near his front door. R.J. moved the device into the parking lot

PLEA AGREEMENT - 5

with a broom. R.J. claimed to not know who would set the explosive device at his apartment.

Subsequently, the deputy interviewed M.F., who stated she was inside her apartment when she heard a loud bang and then felt something hit her door. She described the noise being similar to someone hitting a door with a sledgehammer. When she went outside, she observed an explosive device, the second of two outside of R.J.'s residence. At that point she contacted 911.

The Washington State Patrol ("WSP") Bomb Squad arrived and took control of the unexploded device in the parking lot. The device was rendered safe and then secured. WSP processed the scene of the original explosion, collecting several pieces of the suspected destructive device. Pieces collected included several fragments of electrical tape intermixed with suspected cardboard. The fragments were strewn about the parking lot. One piece of evidence was thrown approximately 130 feet from the blast site.

In additional to the tape and cardboard, there were several inches of metal wire wrapped within the tape. WSP also located a hole in the front door with a coin in it, indicating the device had makeshift shrapnel built into it that when detonated more injury would be incurred. The WSP Bomb Techs also noted that they found U.S. coins wrapped within the tape of the rendered safe device recovered from the parking lot. Additionally, WSP Bomb Techs noted a large chunk of door trim missing at the bottom right of the door. Photos of the doorframe show a reddish colored clay/dirt covering the right bottom corner of the door/door frame and landing area. Intermixed with the clay was an unknown burned explosive powder. Based upon a Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent's ("SA") training and experience, this area was where the suspected destructive device would have been placed upon it exploding. Additionally, the SA noted that clay is often used in commercial fireworks as a filler.

PLEA AGREEMENT - 6

WSP Bomb Techs described the unexploded device as approximately six inches long, a diameter of about one inch, wrapped in black electrical tape. There were coins wrapped inside the device for additional fragmentation. Bomb squad field exploitation of the destructive device indicated that it was suspected to be a Piccolo firework wrapped in black electrical tape. Upon cutting the tube in half, it appeared to be a commercial firework. The techs noticed that there was an unknown white powder, and several U.S. pennies. There as a green pyrotechnic fuse protruding from one end. The tip of the fuse was black, indicating it had been lit at one point but extinguished before it could ignite the suspected device.

Following the incident, on September 11, 2021, another ATF received intelligence from a confidential informant ("CI") regarding who potentially set off the suspected destructive device. The intelligence from the CI included a screen capture of a text conversation involving a Nicholas A. Attached to this name in the phone is a photograph of an individual on a motorcycle. The photographed individual depicted appeared to be consistent with the DOL photo of the Defendant, Nicholas Andrew Anardi, and is the same photograph associated with the Defendant's Facebook page. In the text conversation, the Defendant states the following: "Chillin actually just got done making this bomb about to go throw it at this punks front door down the street." A Google search revealed that the Defendant's residence is approximately .2 miles away from the victim's residence.

On September 21, 2021, the ATF and other law enforcement agencies executed a federal search warrant at the Defendant's residence located at 4064 Airway Drive NE, Moses Lake, Washington. The Defendant shares this residence with his girlfriend. Agents conducted a search of the residence and the detached garage. Agents had to pry open a padlock to access the garage. During the search multiple items of evidentiary value were located, including ammunition, firearm parts, drug paraphernalia, pictures, electrical tape, fireworks, wire, and other items that could be used to manufacture explosive devices.

PLEA AGREEMENT - 7

Subsequently, the devices were submitted to the ATF Explosives Laboratory. In December 2023, the ATF laboratory provided the following results and opinion.
- Device 1 resulted in explosion:
- Device 2 could result in an explosion. The explosion would produce blast, thermal, and fragmentation effects capable of causing property damage and injury or death to person nearby.
- Opinion: devices were improvised explosive bombs, destructive devices as defined in 26 U.S.C. § 5845(f) and would be regulated by Federal Firearms Regulations.

An ATF National Firearm Registration and Transfer Record ("NFRTR") search revealed that the Defendant did not have any firearms or devices registered to him under the NFRTR.

On September 30, 2021, the ATF executed a search warrant of the person of the Defendant. The Defendant was interviewed in the living room of his residence following being advised of his *Miranda* warnings. The Defendant stated he was a drug user and had used heroin almost every day for approximately 7 years. The Defendant confirmed the reason he believed ATF was there as "I'm pretty sure…was it a firework? Firework that went off down the street." ATF asked where the firework came from and the Defendant stated, "From here." The Defendant said he wasn't trying to hurt anybody and states, "I'm not crazy or …trying to bomb people or anything like that…I feel it's blown out of proportion. But I see the dangers in it too, you know." The Defendant claimed he set off the devices as retaliation because someone had robbed his garage when he had been in jail. The Defendant knew the victim as Robert; this individual was at the Defendant's house when he had been arrested. After he was arrested, Robert returned and robbed the garage. The Defendant admitted that he kind of had it out for him after the robbery and wanted to beat him up. The Defendant explained,

PLEA AGREEMENT - 8

one night in the garage he saw a firework and decided to make a "piccolo Pete bomb." The Defendant described a Piccolo Pete bomb as "you just smash it with a hammer and put a little tape around it and it blows up..It's the quickest way to make a little bomb or whatever, you know...but yeah I wasn't trying to hurt nobody or...I was just trying to scare him." The Defendant admitted to making two devices, lit one of them but it didn't go off and then lit the other and that one did. He stated he made the devices by putting tape and metal wire around them. The Defendant confirmed he also wrapped pennies around one of them. The Defendant stated he built them in his garage and then rode a bicycle down to the apartment to deliver the devices. Upon arriving at the apartment, he threw one of the lit devices over the fence toward the apartment but the device didn't go off. The Defendant stated he believed that device was made out of a model rocket engine, with pennies around it. He then said the second device was made out of an aerial mortar round. He stated he lit the second device and rolled it to the door of the apartment and that one went off. The Defendant said he was on drugs at the time and thought it was about two weeks prior to the interview. The Defendant further noted it was dark out when he did this.

8.  The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

9.  United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

PLEA AGREEMENT - 9

a. <u>Base Offense Level</u>

The United States and the Defendant agree that the base offense level for Possession of Unregistered Destructive Device, in violation of 26 U.S.C. §§ 5841, 5845, 5861(d), 5871 is 20. U.S.S.G. § 2K2.1(a)(4)(B)(i)(II), (ii)(I).

b. <u>Special Offense Characteristics</u>

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because the offense involved a destructive device. U.S.S.G. § 2K2.1(b)(3)(B).

The United States will argue the Defendant's base offense level is further increased by 4 levels because the Defendant used or possessed the destructive device in connection with another felony offense. U.S.S.G. §2K2.1(b)(6)(B). The Defendant may object to the application of this specific offense characteristic.

c. <u>Acceptance of Responsibility</u>

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

    i. accepts this Plea Agreement;
    ii. enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;
    iii. demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;
    iv. provides complete and accurate information during the sentencing process; and
    v. does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is

PLEA AGREEMENT - 10

charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

   d. <u>No Other Agreements</u>

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

   e. <u>Criminal History</u>

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

  10. <u>Incarceration</u>

The United States agrees to recommend a sentence no higher than the low end of the Guidelines, as calculated by the United States. The United States calculates the Defendant's guideline range as 92 to 115 months.

Defendant may recommend any legal sentence.

  11. <u>Supervised Release</u>

The United States and Defendant each agree to recommend 3 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

PLEA AGREEMENT - 11

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a.    The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

    b.    Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs.

    c.    Defendant shall complete mental health evaluations and treatment, including taking medications prescribed by the treatment provider. Defendant shall allow reciprocal release of information between the Probation Officer and the treatment provider. Defendant shall contribute to the cost of treatment according to the Defendant's ability.

12. **Criminal Fine**

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13. **Abandonment**

Defendant agrees, to the extent he maintains any interest, to abandon to the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) the following listed assets, including but not limited to:

- a Citadel, Boss 25, 12-gauge shotgun bearing serial number 21-17364.

PLEA AGREEMENT - 12

Defendant agrees to take all steps as requested by the United States and ATF to effectuate the abandonment of the firearm to ATF and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment. Defendant consents to the disposal, including destruction or return to a lawful owner, of the firearm. Defendant agrees to hold all law enforcement agents/officers, and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure and abandonment of any asset covered by this agreement.

Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the United States and/or ATF might take, in their sole discretion, to carry out the abandonment, disposition, and destruction of the firearm. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the firearm, including any such claim for attorney fees and litigation costs.

14. **Mandatory Special Penalty Assessment**

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. **Payments While Incarcerated**

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. **Additional Violations of Law Can Void Plea Agreement**

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of

PLEA AGREEMENT - 13

sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal Rights</u>

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

Defendant expressly waives all of Defendant's rights to appeal Defendant's conviction and the sentence the Court imposes.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18. <u>Withdrawal or Vacatur of Defendant's Plea</u>

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a. any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

    b. the United States may prosecute Defendant on all available charges;

PLEA AGREEMENT - 14

  c. the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

  d. the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

  19. <u>Integration Clause</u>

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

PLEA AGREEMENT - 15

Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_Earl A. Hicks, AUSA for_     8/8/2024
Patrick J. Cashman           Date
Assistant United States Attorney

PLEA AGREEMENT - 16

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____    Aug 8, 2024
Nicholas Andrew Anardi         Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____    8 August 2024
Ryan Farrell                   Date
Attorney for Defendant

PLEA AGREEMENT - 17