1  Vanessa R. Waldref
   United States Attorney
2  Eastern District of Washington
   Timothy J. Ohms
3  Assistant United States Attorney
   Post Office Box 1494
4  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
5

6              UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF WASHINGTON
7
   UNITED STATES OF AMERICA,
8
                    Plaintiff,            2:24-CR-00019-SAB-1
9
        v.                                United States' Sentencing
10                                        Memorandum
   NICHOLAS ANDREW ANARDI,
11
                    Defendant.
12

13      Plaintiff, United States of America, by and through Vanessa R. Waldref,

14 United States Attorney for the Eastern District of Washington, and Timothy J.

15 Ohms, Assistant United States Attorney for the Eastern District of Washington,

16 submits the following Sentencing Memorandum.

17      On February 7, 2024, Defendant was charged by Indictment with one count

18 of Possession of an Unregistered Destructive Device, in violation of 26 U.S.C.

19 §§ 5841, 5845, 5861(d), 5871. ECF No. 1. The case stemmed from evidence that,

20 on or about September 11, 2021, Defendant detonated an improvised explosive

United States' Sentencing Memorandum - 1

device with pennies and wires taped to it in the doorway of an apartment, and attempted to detonate a second device nearby. PSIR ¶¶ 10–26. Possession of an Unregistered Destructive Device as charged in the indictment carries maximum penalties of a term of imprisonment of up to 10-years and up to 3-years of supervised release. ECF No. 3.

On August 8, 2024, Defendant pled guilty to the Indictment pursuant to a Plea Agreement. ECF Nos. 26, 27. The Plea Agreement includes a stipulation that Defendant's Base Offense Level is 20 and subject to a 2-level increase because the offense involved a destructive device. ECF No. 26 at 10. The Plea Agreement also provides that the United States will assert that the base offense level is increased by 4-levels because Defendant used or possessed the destructive device in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6)(B). ECF No. 26 at 10.

The United States agreed to recommend a sentence of the low end of the guideline range as calculated by the United States, which is 92 to 115-months, based upon a total offense level of 23 and a criminal history score of VI. *See* ECF No. 26 at 11. Defendant reserved the right to recommend any legal sentence. ECF No. 26 at 11.

The Presentence Investigation Report (PSIR) indicates that Defendant has a Guideline sentencing range of 63 to 78-months. PSIR ¶ 193 (ECF No. 29). This is

United States' Sentencing Memorandum - 2

based on a total offense level of 19 and a Criminal History Category of VI. PSIR ¶¶ 44, 114, 193. The difference between the United States sentencing guidelines calculation and the PSIR's calculation is based upon the PSIR's conclusion that U.S.S.G. §2K2.1(b)(6)(B) did not apply. ECF No. 30; *see* PSIR ¶ 36. The United States objected to this conclusion. ECF No. 30.

The United States maintains that U.S.S.G. §2K2.1(b)(6)(B) applies and Defendant's guideline range is 92 to 115-months of incarceration. Further, the United States contends that, when the guideline range is accurately calculated, the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a low-end guideline range sentence. As such, the United States recommends a sentence of 92-months of incarceration.

A. U.S.S.G. §2K2.1(b)(6)(B) Applies Because Defendant's Possession of an Unregistered Destructive Device Facilitated at Least Two Other Felony Offenses.

Section 2K2.1(b)(6)(B) applies if the explosive device Defendant possessed "facilitated, or had the potential of facilitating, another felony offense [. . .]." U.S.S.G. §2K2.1 cmt. 14(A). "Another felony offense" is any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought [. . . ]." §2K2.1 cmt. 14(A); *United States v. Fitch*, 659 F.3d 788, 795 (9th Cir. 2011) ("the judge can increase the defendant's

United States' Sentencing Memorandum - 3

sentence based [ . . . ] on uncharged conduct" because it punishes the "manner in which he committed the crime of conviction") (internal citations and quotations omitted). Here, Defendant's possession of the unregistered explosive devices facilitated his commission of two Washington State felony offenses: (1) Second Degree Assault or Attempted Second Degree Assault, and (2) Malicious Placement of an Explosive Device. *See* RCW §§ 70.74.270, 9A.36.021, 9A.28.020.

A person is guilty of assault in the second degree if they assault another with a deadly weapon. RCW § 9A.36.021 (1)(C). One way someone can be convicted of assault is if they do an act "with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." WPIC 25.50; *State v. Ratliff*, 77 Wash. App. 522, 525 (1995) (affirming language in WPIC 25.50 on definition of assault that does not require intent to inflict bodily injury); *State v. Rivas*, 97 Wash. App. 349, 352 (1999) (same); *State v. Krup*, 36 Wash, App., 454 (1984) (same). "Intent to attempt a crime may be inferred from all the facts and circumstances." *State v. Bencivenga*, 137 Wn.2d 703, 709 (1999). Second Degree Assault is a class B felony. RCW § 9A.36.021(2)(a).

When someone attempts a Second Degree Assault by taking a substantial step toward the commission of the crime, it is a class C felony. RCW §

9A.28.020(1), (3)(c). A person can be convicted of attempted second degree assault when there is no evidence the targeted individual was placed in apprehension and fear. *State v. Frasquillo*, 161 Wash. App. 907, 918 (2011). For example, in *Frasquillo*, a Washington court affirmed a conviction for attempted second degree assault where a Defendant failed to "create apprehension" in his victims because they were asleep when he shot into their home. *Id* at 912, 917–18.

Here, the evidence demonstrates Defendant assaulted the individuals in the apartment with a deadly weapon. PSIR ¶ 11, 14, 21, 22. The explosive device used here was a deadly weapon because it was readily able to kill someone if they were nearby when it detonated. *See* RCW § 9A.04.110(6); PSIR ¶ 26. Defendant admits that his intent in placing the improvised explosive device was to put his target in apprehension of bodily harm because he placed the bomb to "scare" the individual inside. PSIR ¶ 21. Further, other circumstances indicate this intent because Defendant wanted to go "beast" on the target because he stole from Defendant's garage, and that Defendant saw the "dangers" in placing the bomb. PSIR ¶ 21; *see Bencivenga*, 137 Wn.2d at 709.

While the individual Defendant intended to "scare" was not particularly cooperative, they still demonstrated that they were placed in reasonable apprehension of bodily injury. PSIR ¶¶ 12–14. For one, the victim came out to investigate the explosion, described it as loud—indicating they were aware of the

explosion and at least apprehensive enough to investigate where the blast came from. PSIR ¶¶ 12–14. As such, Defendant's possession of the explosive device facilitated his commission of Second Degree Assault, and 2K2.1(b)(6)(B) should apply.

This remains true even if Defendant did not complete the crime. Defendant took several substantial steps towards completing the crime, including making the improvised explosive device, biking the explosive device to his target's apartment, throwing the undetonated device over the fence towards his target, and finally rolling the exploded device to target's apartment doorway. PSIR ¶¶ 15, 21, 22. Based on Defendant's statements in the present case, he intended to throw "this bomb . . . at this punk's door down the street to retaliate for a burglary of his garage. PSR ¶ ¶ 15, 21. Defendant acknowledged that his intent was to "scare" the victim. PSR ¶ 21.

Like in *Frasquillo*, where a court affirmed an attempt to assault where there was no evidence of actual fear by the targets, even if the victim here was not placed in immediate apprehension of bodily harm Defendant could still be convicted of attempted assault by placing a bomb at their doorway to frighten the individuals within. *Frasquillo*, 161 Wash. App. at 918. ("That [certain intended victims] were not actually harmed or put in apprehension of harm means that the shooter and his accomplices were guilty of attempted assault rather than a

completed assault; the failure to complete the crime does not absolve [the defendant] of criminal culpability."). Thus, even if the unregistered explosive device did not facilitate Defendant's commission of Second Degree Assault, it facilitated his attempt and 2K2.1(b)(6)(B) still applies.

Defendant's possession of an Unregistered Explosive Device also facilitated his commission of Malicious Placement of an Explosive Device, in violation of RCW § 70.74.270. An individual is guilty of Malicious Placement of an Explosive Device when they (1) maliciously; (2) place any explosive or improvised device against any building or structure; (3) under circumstances as to injure the structure or building if the device explodes. *Id*. Malice may be inferred when an act is done in willful disregard of the rights of another, or does an act betraying a willful disregard of social duty. RCW 9A.04.110(12). This crime is a class B felony when the "safety of any person might be endangered by the explosion" RCW § 70.74.270 (2).

Here, malice can be inferred because Defendant willfully disregarded his target's right to not have his home bombed when he purposefully detonated an improvised explosive device in his victim's doorway. PSIR ¶ 22; *see* RCW 9A.04.110(12). Defendant placed the explosive device at the front door of an apartment and the explosion damaged the structure by blowing shrapnel through the front door, embedding wire into the door and its frame, and blasting away a

"large chunk" of the door trim and forming a hole in the center of the door. PSIR ¶ 13.

The safety of several people were endangered by the explosion, including the victim and other person within the targeted apartment, the several neighbors who came out to investigate the blast, and the bomb squad and other law enforcement responders who were present at the scene to render safe the unexploded device. PSIR ¶ 11–14, 26; *See State v. Madtson*, 117 Wn. App. 1034 ("The Washington Supreme Court has interpreted human endangerment from explosive devices quite broadly"). Therefore, Defendant's possession of the unregistered explosive device facilitated the commission of the felonious placement of said device.

Because Defendant's Possession of an Unregistered Explosive Device facilitated at least other two felony offenses, 2K2.1(b)(6)(B) applies, Defendant's offense level is 23, rather than 19, and Defendant's guideline range is 92 to 115-months.

B. The 18 U.S.C. § 3553(a) factors support a sentence of 92-months.

The nature and circumstances of the offense and the need to protect the public from Defendant support a 92-month sentence. *See* 18 U.S.C. § 3553(a). Defendant built, placed, and attempted to detonate two explosive devices designed to project harmful fragmentation into surrounding areas when they exploded. PSIR

¶¶ 22, 26. The detonation of one device caused substantial damage to an apartment door, embedding wires into the door frame, and sending debris flying as far as 130-feet from the detonation site. PSIR ¶ 13. ATF expert analysis concluded that both the detonated and undetonated devises were "capable of causing injury or death to persons nearby", fortunately for all involved, no individuals were nearby at the time of the explosion. PSIR ¶ 26.

When the first device detonated, the intended victim and his neighbors were drawn out of their apartments to investigate the sound. PSIR ¶ 11, 12, 14. Had the second device detonated at that point several individuals would have been directly exposed to the blast, with potentially deadly consequences. PSIR ¶ 26. Indeed, had both of explosive devices operated as Defendant intended this dangerous sequence of events would have come to pass. *See* PSIR ¶ 22. While Defendant asserts he did not intend to hurt anyone, this statement is undermined by the fact that he intentionally taped coins and wires to an explosive device, which made the explosion much more dangerous to human life. PSIR ¶ 21, 22. The dangerous situation Defendant created in committing this offense necessitates a substantial 92-month sentence.

The need to protect the community from Defendant is also illustrated by the evidence uncovered in this case showing that Defendant unlawfully possessed firearms. PSIR ¶¶ 19–21, 23–24; 109. When executing a search warrant on

Defendant's residence following the explosions, officers discovered various rounds of ammunition, suspected heroin, and photographs of Defendant with firearms. PSIR ¶¶ 19, 24. When asked about the firearms, Defendant said his wife purchased them because he knew he could not "be around them or have them". PSIR ¶ 21. However, Defendant helped buy ammunition for the firearms. PSIR ¶ 23. A subsequent search of Defendant's phone also revealed images of Defendant holding and shooting two firearms. PSIR ¶ 24. The combination of Defendant's drug use and this firearm possession poses a grave threat to the community. *See* PSIR ¶¶ 160-165. Further, Defendant has demonstrated that even though he knows he may not handle firearms he will still choose to acquire and use them. PSIR ¶¶ 20, 21, 24. A 92-month sentence will protect the public from Defendant's dangerous possession of firearms as both a felon and controlled substance user.

     Finally, the decision-making Defendant demonstrated in this case is particularly concerning for the United States. Defendant, if his story is taken as true, was justifiably aggravated about items being stolen from his garage. PSIR ¶ 21. However, rather than rely on law enforcement to rectify the situation Defendant chose to build multiple, potentially deadly explosive devices and detonate them in a public place—endangering innocent people in the process. PSIR ¶¶ 21–22, 26. Even more concerning, Defendant's potentially deadly behavior was directed at someone he "barely met". PSIR ¶ 21. These are not the decisions of an

individual equipped to live safely in the community. A significant sentence will provide enough time for Defendant to effectively use the BOP's vocational and rehabilitative resources to gain the skills necessary to safely rejoin society. *See* 18 U.S.C. § 3553(a)(2)(D).

Further, Defendant has attended rehabilitation for controlled substance use four times and has returned to use of controlled substances each time—blaming the DOC policy of release to the "same environment with the same friends and acquaintances" for his relapse rather than taking accountability for his own actions. PSIR ¶ 165. A 92-month sentence will enable Defendant to access the resources he needs to overcome his controlled substance addictions and refrain from resuming such use when he is released.

The history and characteristics of Defendant—as well as the need to promote respect for the law—also weigh in favor of a 92-month sentence. *See* 18 U.S.C. § 3553(a) (1), (2). Defendant is in the highest possible criminal history category, and his extensive criminal history includes multiple felony convictions involving the illegal possession of weapons (PSIR ¶¶ 71, 84, 86, 87, 92, 93, 106), theft or burglary (PSIR ¶¶ 90, 96, 101, 106, 111), and convictions involving assaultive conduct and domestic violence (PSIR ¶¶ 65, 67, 74). Defendant has also been charged with driving under the influence and driving while his license was

suspended or without an interlock device over four times. PSIR ¶¶ 78, 94, 95, 98, 104.

In 2011, Defendant was convicted of possessing a dangerous weapon. PSIR ¶ 74. The charge stemmed from an incident of Defendant being intoxicated and verbally abusive at a casino. PSIR ¶ 74. During the incident, Defendant threatened to kill a woman who identified as Defendant's girlfriend. PSIR ¶ 74. The victim reported that she feared for her life when Defendant said "I'm going to kill you bitch!" PSIR ¶ 74.

In 2014, Defendant was convicted of possessing a dangerous weapon, stemming from his possession of metal knuckles. PSIR ¶ 106. Defendant's possession of the illegal metal knuckles was revealed because he contacted a confidential informant in an attempt to sell him a bag containing coins, gold, and diamonds. PSIR ¶106.

In April 2021, Defendant was pulled over while driving with a suspended license. PSIR ¶ 109. A search of Defendant revealed heroin in his pocket. PSIR ¶109. Defendant's daughter was a passenger in the car at the time. PSIR ¶109. Also in the vehicle was a Boss semiautomatic shotgun with a "drum style magazine" and another loaded magazine, and a music stand with bullet holes. PSIR ¶109. Defendant initially represented that the firearm was his wife's and she had forgotten it in the vehicle the night before when she went shooting. PSIR ¶109.

Defendant acknowledged he was a convicted felon who could not "be around firearms". PSIR ¶109. Eventually, Defendant said that even though he was not supposed to be around the weapon, he had held it, manipulated it , and shot it. PSIR ¶109.

Defendant's pattern of felony offenses has continued relatively uninterrupted, except periods of incarceration, since 2011 and includes felonies Defendant committed since committing the instant offense. *See* PSIR ¶¶ 71– 112. Defendant has also failed to appear in various court cases over 24 times. PSIR ¶¶ 64, 79, 82, 85, 88, 91, 97, 99. 105. Defendant is currently not an individual with respect for the rules of society, and his criminal history supports a sentence of 92-months.

### C. Conclusion

A 92-month sentence is necessary to afford just punishment for Defendant's dangerous and reckless behavior, deter him from endangering individuals in the future, and to promote respect for the law. 18 U.S.C. § 3553(a)(1), (2). None of the shorter sentences Defendant has served have deterred him from his pattern of criminal behavior. PSIR ¶¶ 63–145. A sentence at the low end of the guidelines range will be the longest sentence Defendant has served and is sufficient, while no greater than necessary, to encourage Defendant to break out of his pattern of dangerous criminal behavior and substance abuse. Therefore, the United States

recommends this Court sentence Defendant to 92-months of incarceration with three years of supervised release to follow.

Dated: October 29, 2024.

Vanessa R. Waldref
United States Attorney

*s/ Timothy J. Ohms*
Timothy J. Ohms
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Ryan Mark Farrell
ryan_Farrell@fd.org

                                         *s/ Timothy J. Ohms*
                                         Timothy J. Ohms
                                         Assistant United States Attorney

United States' Sentencing Memorandum - 15